v. U.S. Department of Agriculture Arguments not to exceed 15 minutes per side Ms. Giles for the petitioner you may proceed. Thank you. Good morning your honors. I will reserve three minutes for rebuttal please. This case was briefed as if resting on whether Mr. Horton committed a willful violation of the act in question. That is relevant for several purposes. First for whether there was a violation in the opinion of Mr. Horton conceding that even if there was not a willful violation it was alleged in the complaint that there must be a willful violation and that wasn't proven. The second purpose that may be important is for determining the amount of the civil penalty that was assessed. So although not explicitly stated it is implicit that a finding of willfulness is important and was actually factored into the judicial officer's review of this case. So the first question is whether there was a violation. I think that it's pretty clear that Mr. Horton was operating as a dealer for the first set of transactions and if I could just kind of summarize those transactions because I'm not good with rattling off dates. There were about 950 dogs sold in an 11 month period from November of 2006 to September of 2007. So I would just refer to those as probably the 950 dogs. Does this willfulness issue come up from the law or just because that's what they claimed he did originally? Our position is that because the complaint stated that the violations were willful, the USDA would be required to prove that on the finding of summary judgment and neither the administrative law judge nor the judicial officer found willfulness. So using the summary judgment standard, the summary judgment motion should have been denied at the initial level. What if the government misstated the legal standard in the complaint and there were no willfulness requirement, wouldn't that be a basis to permit the complaint to go forward? Yes, Your Honor, I believe that's so. There probably should have, it would have been necessary for some procedural elements to have been done, maybe amending the complaint, something like that. That wasn't done, but Mr. Horton would concede that there doesn't need to be, willfulness isn't required in order for the administration to order him to cease and desist or order a civil penalty to be assessed against him. So the essence of your position then is that there simply had to be an amendment of the complaint before it could have proceeded to summary judgment if there wasn't evidence of willfulness? That isn't the essence of our argument, Your Honor, with all due respect. I think that's a point that's come up today. I think the more appropriate way to frame the essence of the argument today is that the civil penalty imposed just wasn't supported by law or fact. Whether or not it was willful? Yes, Your Honor. I think that willfulness is something that was taken into account when weighing those factors and there just wasn't a finding of willfulness. And if that spilled over into the analysis under the factors, then that would have been improper. I think that the primary way willfulness was used was kind of intertwined with the good faith factors, the gravity of the offenses, and whether there were prior violations. The fourth factor that would be necessary to have been weighed that I haven't mentioned would be the size of the operation. It sure was a big civil penalty, but it still was within the authority of the officer. I mean, it wasn't nearly the maximum that your client could have gotten. That's correct, Your Honor. I'm not a mathematician. The maximum was about $3,500. I don't know what percentage of that was levied. It was actually about $200 per dog. You're talking about $3,000 a dog, which is running over a million dollars. That's correct, Your Honor. That's what the department wanted, wasn't it? It was a great big fee, and probably this fell into the ground, I guess, mayhap with this penalty. That's correct, Your Honor. The $1.7 million fee that the agency requested would have been the largest by far fee ever assessed against somebody for violating the Animal Welfare Act. Actually, the largest penalty that I could find was against the Ringling Brothers, and it was $270,000. We're not dealing with the Ringling Brothers here. We're dealing with a breeder in Hillsdale, Virginia, who, after being notified by inspectors that he was in violation of the Animal Welfare Act, substantially decreased the amount of dogs he had sold. There is a question, after he was notified by the inspector in an in-person visit in Mr. Horton sold approximately 48 dogs. There was one transaction that involved 42 dogs, another that was four dogs, and one that was two dogs. Those three transactions occurred over about a year and a half, a little less than a year and a half's time, which compared to the scale of the operation that Mr. Horton had been which I think goes to good faith. The judicial officer determined that Mr. Horton was acting in bad faith because he continued operations, and that's true. Mr. Horton isn't denying that any of these sales occurred, because it is well-documented by fact that they occurred. But when we're looking at good faith, when he's scaling down his operation from 950 dogs in 11 months to less than 50 dogs in about 15 months, that's a serious good faith effort to come into compliance with what's required. And there was a material issue of fact that could have been litigated had this matter gone to hearing instead of being disposed of with summary judgment. There were two transactions, the four-dog sale and the two-dog sale, that are pretty clearly retail transactions. And there is an exemption in the act, and I don't think that fact is disputed, that a person who's just selling dogs out of their home to another person as a pet is exempt from the act. But Mr. Horton would concede that that 42-dog transaction is a borderline transaction on its face. There would have been evidence presented at hearing that Mr. Horton didn't know what the was intending to do with those dogs. And that was also stated in an affidavit. But that was after he was told by this veterinarian that he had to have the license, but he didn't take one, he didn't get one? That's correct, Your Honor. That is correct. When we're looking at faith, this is where the willfulness inquiry is also important. A willful violation of a law, meaning intentionally disregarding a law, is not good faith. That's bad faith. That's a common-sense notion of bad faith. Neither of the reviewing bodies here found a willful violation. The judicial officer declined to make a finding because it was irrelevant, but that's something worth noting. The gravity of the offense, one of the other factors in considering what amount of civil penalty to assess, those kind of got muddled together by the judicial officer. I'm sorry, the prior violations kind of got muddled together with willfulness by the judicial officer. The judicial officer found that because there were so many violations that allegedly occurred, that the violations in this case were in and of themselves prior violations under the Act. That's a notion that is nowhere, there's no support for that anywhere else in the law, that a prior violation can occur in the same case that's being litigated. There was a case that's been cited, Mazzallo, and that's briefed well. Mazzallo involved a dealer who was harassing APHIS officers, threatening APHIS officers, who had a pattern of contact, routine contact with officers, and continued to disregard their insistence that he obtain a license. That's not what occurred here. Mr. Horton was cooperative. He voluntarily allowed the inspector to come onto his property, showed him around, volunteered information, did not threaten or harass anyone, and, as I mentioned before, significantly scaled down his operation after learning that it was the opinion of APHIS that he needed a license. Of course, the problem here is that our standard of review is on whether it's arbitrary or capricious or otherwise not in accordance with the law, and it's hard to say it's arbitrary or capricious under the circumstances, even though the case that you relate is much worse. But this is the law, and I know a lot of people don't want to fool with it because they don't want to take out a license when they sell their dogs, but that's what the law is. Unless it's unconstitutional, why do we have to follow it? Your Honor, I think that one of the things to look at in determining whether something is arbitrary is whether it's supported by fact, and some of the facts that I've spoken of today were known to both reviewing bodies and were nevertheless, I would say disregarded, but were not properly taken into consideration, weren't properly applied to the factors. For example, the gravity of the offense. The administrative law judge found that this was a grave offense because it deprived APHIS of being able to identify him. He was known to APHIS. They could identify him. That's how they found him in the first place. And in fact, the principal purpose of the Animal Welfare Act isn't to identify licensees. It's to protect animals. It's not the Licensee Identification Act. And that was another fact that was brought up in Missoula. That was the principal purpose. Also I would tie in good faith, a sort of good faith argument here. Mr. Horton acted in good faith, and that should lessen the gravity of the offenses. My time is almost expired, so if there aren't any further questions, I'll reserve my time for rebuttal.  Thank you.  Good morning, my name is Leslie Lagomarsino. I represent the Secretary of the Department of Agriculture. As we have read in the brief and heard just now, Mr. Horton concedes that he was a dealer and was required to have an animal welfare license under the Animal Welfare Act. He argues that the Secretary erred in not finding that he committed his violations willfully. There is no scienter requirement in the Animal Welfare Act. The Act states plainly that everyone dealing in dogs must receive an Animal Welfare Act license, and failure to get a license results in a penalty. But your department took an appeal from the ALJ because ALJ didn't find a question of willfulness, right? This is correct. And also filed a complaint and put that willfulness in there. Why did you do that if it's not required? The administrator improperly included willfulness in the complaint, but as the administrator is placing that word in the complaint, cannot read that requirement into the law when the statute itself does not require it. And the administrative law judge addressed this issue when it was raised directly to the Administrator by Mr. Horton and by the Administrator, and the Administrative Law Judge correctly found that it's not relevant to a finding of a violation. That issue, as you know, was raised to the Judicial Officer by both parties, and the Judicial Officer agreed with the Administrative Law Judge that it's just not in the Act. And the law does not require it. But why shouldn't we just say, well, since your department twice said it should be in the Act, why don't we send it back and say, make a finding? Because the law governs the requirements here. Congress did not put the requirement into the Act. The law does not require it, and the Administrator's improper citing of that standard in the complaint cannot override Congress's intention. It'd be a whole lot better if you started off on the right foot, I guess. Right? That's true. It would have saved a lot of time and effort, and I think that the Administrator from this day forward is on the right track. I guess one of the questions I have with regard to that, though, is that if you started out with the view that there did need to be a willfulness, that willfulness was an element of this, even though you're now saying, well, it isn't, so it doesn't matter what we said, to what extent did a belief that this was willful impact the determination of the penalty? The Administrator of APHIS in bringing the complaint alleged willfulness, but the Judicial Officer is the final deciding officer for the Department of Agriculture, so it's the Judicial Officer's finding that's under review by this Court today, and the finding of willfulness played no part at all in the Judicial Officer's decision. The Judicial Officer considered the four factors that are required by the statute. He considered the size of the business, the gravity of the offense, the history of prior violations, and good faith, and there's no requirement that he consider willfulness under the statute, and in considering those four factors, he assessed a penalty against Mr. Horton of $200 a dog, which was well within the statutory limits defined by Congress. Congress allowed, at that time, a penalty of $3,750 per violation. Congress since then has increased the maximum penalty to $10,000 per violation. This is a big penalty, isn't it? It's about as big as you see. She claims that Ringland Brothers had a bigger penalty, but this guy here is just kind of a one-man operation, isn't he? This Mr. Horton is a one-man operation who sold thousands of dogs without an Animal Welfare Act license. He sold almost 1,000 dogs within a 19-month period, and these were not, these were expensive dogs. As you can see from the chart, these were designer dogs, these are the little dogs that celebrities carry in their purses. He was getting over $200 a dog. The administrative law judge's penalty of $14,000 would have amounted to approximately a $15 penalty for dog, which would easily have been absorbed in his cost of doing business. So the judicial officer imposed a $200 per violation penalty in order to deter Mr. Horton from continuing these violations and also to deter others similarly situated. It was a purpose of the Act, and the civil penalty is to deter this violator as well as other violators. So the judicial officer made a conscious decision to impose a penalty that could not simply be absorbed as a cost of doing business. It was well justified and well within the bounds of the statute and certainly not arbitrary and capricious. Did he, or is she, I don't know who the judicial officer was, but was the penalty or the violations after Mr. Horton was told that he had to have a license greater on no sales or was it the same on all sales?  Mr. Horton sold 900 and a total of 956 dogs. He sold the majority of those between November of 2006 and September of 2007. APHIS notified him by letter on November 6, 2007, that APHIS believed that he was required to have an Animal Welfare Act license. APHIS sent him the statute, the regulations, and an application form. All he had to do was fill out the license application form and submit a $10 application fee and he would have started the process in motion. Mr. Horton never did that. Instead, he continued to sell dogs and after that, receiving that letter, he sold another 42 dogs before he was visited by an APHIS inspector who told him point blank, you can't do this, you need an Animal Welfare Act license. So the judicial officer did note that the sale of those 42 dogs was in patently bad faith. However, he considered the history of the violations going back to the beginning and assessed an equal penalty for all dogs, which was certainly within his discretion to do. He could have imposed a greater penalty for the 42 dogs, but he didn't do so, and his determination to apply a $200 per dog fee across the board is within his discretion under the statute. Was the capability of Mr. Horton to pay this penalty considered at all? I know you said it was considered by the fact he sold 900 dogs, but how much does he have left? I don't know what it costs to raise a dog like that. An offender's ability to pay is not considered. Not considered at all. Not considered at all. Can it be wiped out by bankruptcy? It can't probably, can it? What would happen if he's unable to pay the penalty is the secretary could refer it to the Department of Justice to start collection proceedings, and that's what would happen in this case if he's unable. It sounds like an awful heavy penalty, but I know it's still within the parameters of what's allowed. And that is the deciding issue here. It's well within the secretary's statutory authority. It's well supported by the facts, which Mr. Horton doesn't dispute. So this penalty under this court's standard of review must be upheld, and we would ask that this court deny the petition for review. Thank you. Thank you, Your Honors. I'd just like to touch on one small point that Your Honor asked, arbitrary, if we're focusing on capricious and arbitrary. I just heard three things that were arbitrary. The judicial officer could have imposed an equal penalty for dogs sold before the inspector notified Mr. Horton and after, but he imposed the same, arbitrary. Didn't weigh that this claimed more bad faith. They just went with an arbitrary number, pulling out $200 per dog out of the hat as a penalty that couldn't be absorbed as simply the cost of doing business. That's arbitrary. There was never any information before the court on what Mr. Horton's cost of doing business was and any figures or anything like that. It was arbitrary to just pull this penalty that couldn't be absorbed as the cost of business out of the hat. And the third and kind of the most shocking arbitrary reason for this penalty is as a deterrent to Mr. Horton, a deterrent to future violators. I don't know if it's possible to provide support for what civil penalty would be a deterrent effect on potential violators of the animal welfare. It would certainly have a deterrent effect on Mr. Horton. That's true, Your Honor. I think any amount would have a deterrent effect on Mr. Horton because as counsel just stated, the license application fee is $10. And there are certain license reinstatement fees, other fees that are associated with the Animal Welfare Act, and fees that are an increased cost of doing business from inspections and certain requirements that must be met. It increases the cost of business to be compliant with the Animal Welfare Act, surely. But a deterrent effect on others, a deterrent effect on Mr. Horton, I don't think any business person would want to spend a dollar more than they would have to do something, to do business. So any amount could have been a deterrent effect. And what they chose was arbitrary. With that, Your Honors, we would respectfully request that the court adopt the finding of the administrative law judge. We believe the civil penalty imposed in that case was appropriate, or I'm sorry, in that decision was appropriate. And Mr. Horton would concede that he would cease and desist from further violations of the Animal Welfare Act. Thank you for your time. Thank you, counsel. The case will be submitted. The clerk may call the next case.